UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| COURTNEY F.,[1] | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| *v.* | ) | No. 1:21-cv-02943-MG-JRS |
| | ) | |
| KILOLO KIJAKAZI, Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| *Defendant.* | ) | |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

On February 3, 2020, Plaintiff Courtney F. applied for disability insurance benefits ("DIB")

from the Social Security Administration ("SSA"), alleging a disability onset date of January 1,

2019. [Filing No. 7-6 at 9-15.] Her application was initially denied on April 23, 2020, [Filing No.

7-4 at 2-10; Filing No. 7-5 at 6-9], and upon reconsideration on July 22, 2020, [Filing No. 7-4 at

11-23; Filing No. 7-5 at 12-14].   Administrative Law Judge Gladys Whitfield (the "ALJ")

conducted a hearing on April 8, 2021.  [Filing No. 7-3.]  The ALJ issued a decision on May 27,

2021, concluding that Courtney F. was not entitled to receive benefits.  [Filing No. 7-2 at 8-27.]

The Appeals Council denied review on October 4, 2021.  [Filing No. 7-2 at 2-6.]  On November

30, 2021, Courtney F. filed this civil action asking the Court to review the denial of benefits

according to 42 U.S.C. § 405(g).  [Filing No. 1.]

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  [Filing No. 9.]  For the reasons set forth below, the Court **AFFIRMS** the ALJ's decision denying Courtney F. benefits.

## I.
### STANDARD OF REVIEW

"The [SSA] provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019).  Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision.  *Id.*  For purposes of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154).  "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327.  Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and if not, at step five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v). The burden of proof is on the claimant for steps one through four; only at step five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also

appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

Courtney F. was 42 years old on the date of her alleged onset of disability and has a high-school education. [*See* Filing No. 7-2 at 21.] She has past relevant work as a school bus monitor. [*See* Filing No. 7-2 at 21.] Courtney F.'s original application alleges that she cannot work because she suffers from epilepsy and is "partially paralyzed on the left side."[2] [Filing No. 7-7 at 3.]

The ALJ followed the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520(a)(4) and concluded that Courtney F. was not disabled. Specifically, the ALJ found as follows:

- At Step One, Courtney F. had not engaged in substantial gainful activity since January 1, 2019—*i.e.*, the alleged onset date. [Filing No. 7-2 at 14.]

- At Step Two, Courtney F. had the following severe impairments: "epilepsy; residual mild weakness in the left side and foot drop; status post brain aneurysm and surgery; panic disorder; depression; and generalized anxiety disorder." [Filing No. 7-2 at 14.]

- At Step Three, Courtney F. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments—specifically Listings 11.02 (epilepsy); 11.04 (vascular insult to the brain); 12.04 (depressive, bipolar and related disorders), and 12.06 (anxiety and obsessive-compulsive disorders).

- After Step Three but before Step Four, the ALJ determined that Courtney F. had the RFC "to perform light work as defined in 20 CFR 416.967(a) in that she can lift and/or carry twenty pounds occasionally and ten pounds frequently. She can stand and/or walk for about six hours and sit for about six hours in an eight-hour workday, with

---

[2] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

normal breaks. She can never climb ladders, ropes, or scaffolds and can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. She cannot work around open flames or large bodies of water. She can reach forward and to the side, handle, feel, and finger no more than frequently. She can reach overhead no more than occasionally. She can never operate foot controls. She cannot tolerate wet or slippery surfaces. She should avoid all exposure to hazardous moving machinery and to unprotected heights. She cannot perform jobs requiring driving or operation of a motorized vehicle. She can understand, remember, and carry out unskilled work that can be learned in thirty days or less. She can work independently, with end of day production goals or standards. She cannot engaged [*sic*] in complex verbal or written communication or complex decision-making. She is limited to simple, routine, repetitive tasks, that is short-cycle work where the same routine tasks are performed over and over according to set procedures, sequence, or pace. She cannot perform tandem tasks or teamwork. She cannot tolerate fast-paced or assembly-line production requirements. She can have no more than occasional brief interactions with coworkers, supervisors, and the general public. She can tolerate no more than occasional and routine workplace changes. She can manage normal supervisory interactions, as needed, including, for example, performance appraisals, corrections, instructions, and directives as necessary. She can tolerate interactions to receive instructions and for task completion of simple, routine, repetitive work. She can exercise judgment in making work-related decisions commensurate with simple, routine, repetitive work, as has been described herein." [Filing No. 7-2 at 16.]

- At Step Four, the ALJ found that Courtney F. was unable to perform her past work as a bus monitor. [Filing No. 7-2 at 20-21.]

- At Step Five, relying on the testimony of a vocational expert ("VE") and considering Courtney F.'s age, education, work experience, and RFC, the ALJ determined there are jobs existing in significant numbers in the national economy that Courtney F. could perform, such as Cleaner, Marking clerk, Routing clerk, Document preparer, Addresser clerk, and Tube operator. [Filing No. 7-2 at 21-22.]

### III.
### DISCUSSION

Courtney F. raises two issues on appeal: (1) whether the ALJ properly applied SSR 16-3p when assessing her subjective symptoms; and (2) whether the ALJ properly assessed a statement from her treating neurologist, Dr. Sadia Saba. [Filing No. 11 at 4.] Each argument is addressed below.

### A.  Subjective Symptoms

Courtney F. first argues that the ALJ failed to adequately articulate reasons for finding that her statements about the intensity, persistence, and pace of her symptoms were not fully supported by the record.  [Filing No. 11 at 16-17.]  She faults the ALJ for providing "no discussion or evaluation of the factors contained within SSR 16-3p," and says that the ALJ instead "only included [a] summary of the medical evidence and medical opinions of record," noting that SSA regulations and Seventh Circuit caselaw precludes an ALJ from discounting subjective symptoms solely because the stated symptoms are not supported by the medical evidence.  [Filing No. 11 at 18.]  Courtney F. takes issue with the ALJ's description of her epilepsy as "stable" and cites evidence that she continues to have breakthrough seizures.  [Filing No. 11 at 18-19.]  She argues that the ALJ erred by not taking "the additional step necessary to explain why [Courtney F.'s] 'stable' condition undermined her credibility."  [Filing No. 11 at 19.]  Courtney F. also argues that it was error for the ALJ to cite her lack of mental health treatment as a basis to find her stated mental health symptoms to be inconsistent.  [Filing No. 11 at 19.]  More specifically, Courtney F. contends that the ALJ had an obligation to inquire about her lack of mental health treatment.  [Filing No. 11 at 19.]  Finally, Courtney F. argues that the ALJ's citation to her ability to complete certain daily living activities does not undercut her alleged symptoms because "full-time work does not allow for the flexibility to work around periods of incapacitation."  [Filing No. 11 at 20.]

In response, the Commissioner contends that the ALJ properly considered and articulated the differences between the symptoms testified to by Courtney F. at her hearing and those reported to her doctor as a reason for discounting Courtney F.'s subjective symptoms.  [Filing No. 13 at 10.]  The Commissioner points to the ALJ's explanation that Courtney F. testified that she had one or two seizures per week but that she elsewhere told her physicians that had one or two brief seizures

6

a month or would sometimes go an entire month without seizures. [Filing No. 13 at 9.] The ALJ also noted that while Courtney F. reported weakness on her left side that prevented her from dressing herself, objective examinations found no issues with her extremities and that elsewhere Courtney F. told examiners that she could complete tasks of daily living independently. [Filing No. 13 at 9-10.] Thus, the Commissioner argues, "the ALJ did not discredit [Courtney F.'s] testimony 'solely' because it was unsupported by objective evidence, but properly contrasted it with evidence in the record [of Courtney F.'s prior statements]." [Filing No. 13 at 13.] The Commissioner also says that it was proper for the ALJ to cite Courtney F.'s lack of treatment. [Filing No. 13 at 11 ("[T]he lack of treatment for mental health issues reasonably undermined [Courtney F.'s] testimony that she was 'overwhelmed' by panic and anxiety.").] The Commissioner dismisses Courtney F.'s argument that the ALJ had an obligation to inquire further about her reasons for not seeking treatment by pointing out that it is a claimant's burden to establish disability and that "there is nothing to suggest that [Courtney F.] wanted additional treatment but was unable to obtain it." [Filing No. 13 at 14.] Finally, the Commissioner rejects Courtney F.'s claim that the ALJ improperly equated her ability to perform day-to-day living activities with the ability to work full-time, arguing that instead the ALJ "cited specific activities to illustrate inconsistencies with her subjective allegations regarding her abilities." [Filing No. 13 at 15.]

In reply, Courtney F. contends that the Commissioner mischaracterizes evidence regarding Courtney F.'s statements about her ability to dress, shower, and complete other tasks of daily living such that they are not inconsistent with her hearing testimony. [Filing No. 15 at 1.] She also reiterates that it was error for the ALJ not to question her about her lack of mental health treatment. [Filing No. 15 at 2.] Finally, Courtney F. contends that electroencephalogram ("EEG") testing in

February 2021 supports her testimony that she experiences seizure activity the weekly frequency to which she alleged at the hearing.  [Filing No. 15 at 3.]

An ALJ's evaluation of subjective symptoms will be upheld unless it is "patently wrong." *Shidler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012).  Nevertheless, the ALJ must provide specific reasons supporting the evaluation that are anchored in the record.  *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013).

SSR 16-3p addresses the method by which ALJs should "evaluate statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims."  SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017).  SSR 16-3p eliminates "the use of the term 'credibility'" from the evaluation process and clarifies that "subjective symptom evaluation is not an examination of an individual's character.  Instead, we will more closely follow our regulatory language regarding symptom evaluation."  *Id.* at *1.  SSR 16-3p instructs ALJs to use the following method to evaluate statements regarding the intensity, persistence, and limiting effects of symptoms:

> Consistent with our regulations, we instruct our adjudicators to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms. We evaluate the intensity and persistence of an individual's symptoms so we can determine how symptoms limit ability to perform work-related activities for an adult.

*Id.* at *2.

Thus, ALJs use a two-step process to evaluate an individual's subjective symptoms.  First, an ALJ must determine whether a claimant has "an underlying medically determinable physical or mental impairment that could reasonably be expected to produce an individual's symptoms."  *Id.* at *3.  If the claimant is found to have such a medically determinable impairment at step one, the ALJ moves to step two where the ALJ must consider all of the evidence in the record to evaluate

the intensity and persistence of an individual's symptoms and "determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." SSR 16-3p, 2017 WL 5180304, at *4.  To conduct this analysis at the second step, SSR 16-3p instructs as follows:

> In considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; and individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.

*Id.*  When assessing a claimant's symptom testimony, the ALJ also considers the factors set forth in 20 C.F.R. § 404.1529(c)(3), *i.e.*, (1) a claimant's daily activities, (2) the location, duration, frequency of the pain or other symptoms, (3) precipitating and aggravating factors, (4) the type, dosage, effectiveness, and side effects of any medication, (5) treatment received for relief of pain or other symptoms, (6) measures the claimant uses to relieve pain or other symptoms, and (7) other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms.  *Id.*

Ultimately, the ALJ must explain the subjective symptom analysis "in such a way that allows [a court] to determine whether [the ALJ] reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (internal quotations omitted).  And, "[n]ot all of the ALJ's reasons must be valid," to uphold a subjective symptom finding, "as long as enough of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009).

Here, the ALJ concluded at step one of SSR 16-3p that Courtney F.'s medical impairments could reasonably be expected to produce her alleged symptoms.  [Filing No. 7-2 at 17.]  However, at step two, the ALJ found that Courtney F.'s statements about the intensity, persistence, and

limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record.  [Filing No. 7-2 at 17.]

      In commencing her explanation at step two, the ALJ first recounted Courtney F.'s testimony that she has seizures once or twice per week during which she may black out and experience shaking; had weakness in her left leg and foot; could not lift a gallon of milk; had trouble dressing herself; moved slowly; and had trouble adhering to a regular scheduled because of her panic and anxiety issues.  [Filing No. 7-2 at 17.]  The ALJ then summarized the medical evidence, including evidence that seemingly contradicted Courtney F.'s hearing testimony, [see Filing No. 7-2 at 17-18], such as medical records from December 2019 in which Courtney F. reported to doctors that she had "brief seizures once or twice per month, and she noted that she could sometimes go a whole month" without any seizures and that her neurologist recommended follow up in six months.  [Filing No. 7-2 at 17 (citing Exs. 3F & 5F).]  The ALJ also cited the results of a physical examination that showed that Courtney F. "had good strength in all extremities, with grossly normal sensation and intact gait and coordination" and that "[a] cranial nerve evaluation was normal."  [Filing No. 7-2 at 17 (citing Ex. 3F).]  The ALJ then discussed the results of an examination performed in June 2020 by Courtney F.'s primary care physician in which Courtney F. "noted no recent seizures" and denied any significant changes.  [Filing No. 7-2 at 18 (citing Ex. 7F).]  Likewise, in a September 2020 visit, Courtney F. denied any physical symptoms.  [Filing No. 7-2 at 18 (citing Ex. 7F).]  The ALJ next reviewed the results of February 2021 EEG testing for Courtney F.'s epilepsy that showed "occasional moderate to high amplitude sharp and spike discharges over the temporal head region," and other findings "suggestive of an epileptogenic structural or function lesion in the right mid temporal head area." [Filing No. 7-2 at 18 (citing Ex. 6F).]

Turning to Courtney F.'s allegations about her mental impairments, the ALJ reviewed the medical evidence, including reports by Courtney F. to her providers in December 2019 and June 2020 that she had increased anxiety and mood changes but was stable with normal behavior and clear thought processes. [Filing No. 7-2 at 18 (citing Exs. 3F & 7F).] During a July 2020 psychological consultative exam, Courtney F. reported anxiety, restless sleep, panic attacks, and irritability. [Filing No. 7-2 at 18 (citing Ex. 4F).] She reported that she had not obtained any psychological services or treatment since she was 17 years old. [Filing No. 7-2 at 18 (citing Ex. 4F).] The examiner found Courtney F.'s thought processes to be "logical, sequential, and pertinent" with "normal thought content" and her judgment to be "fair" and that Courtney F. was cooperative. [Filing No. 7-2 at 18 (citing Ex. 4F).]

After summarizing this medical evidence, the ALJ further explained her finding at step two of SSR 16-3p.

> The claimant's statements about the intensity, persistence, and limiting effects of her symptoms are inconsistent with the medical evidence and other evidence in the record. In 2019, the claimant reported only occasional brief seizure episodes, and she said that she was doing well overall at that time. In addition, she showed full strength, normal neurologic functioning, intact coordination, a normal gait, and full sensation (Ex. 3F/2-3). At another appointment in June of 2020, the claimant reported no recent seizures, and her epilepsy was reported to be stable (Ex. 7F/22). In September of 2020, the claimant denied dizziness, lightheadedness, and headaches, and a physical examination was normal (Ex. 7F/5-6). In 2021, objective testing showed nonepileptic events, but there is no indication in the record that these events were followed up on or caused limiting symptoms (Ex. 6F/2). In terms of her mental health, the claimant received almost no mental health treatment, and her treating providers noted that the claimant showed normal behavior, a clear mental state, and normal speech (Ex. 3F/3; 7F/26). At a consultative examination, the claimant was cooperative, with average intelligence. She could spell a word forward, complete serial 3 testing, recall items immediately and after a delay, and complete simple math problems at that time (Ex. 4F/2-3). Finally, in 2020, the claimant told a consultative examiner that she could shower, dress, and use the toilet independently, and she noted the ability to cook and clean as needed (Ex. 4F/3). Importantly, the claimant reported that she stopped working due to COVID-19, not due to her impairments (Ex. 4F/1). In sum, the medical evidence and other evidence

in the record is not consistent with the claimant's allegations regarding her symptoms.

[Filing No. 7-2 at 18-19.]

Thus, the ALJ found Courtney F.'s testimony about her symptoms to be undercut by: (1) the medical evidence; (2) Courtney F.'s inconsistent statements to providers; (3) the course of her mental health treatment (and the lack thereof); (4) Courtney F.'s reports of activities of daily living; and (5) Courtney F.'s statements to a consultative examiner that she stopped working as a bus monitor because of school closures related to COVID-19 (and not because of physical and mental limitations). The ALJ adhered to SSR 16-3p and adequately explained her rationale for finding Courtney F.'s testimony about her symptoms to be inconsistent with the record. *See Apke v. Saul, 817 F. App'x 252, 257-78 (7th Cir. 2020)* ("The ALJ adhered to the regulations by considering Apke's own statements regarding her fibromyalgia limitations. Apke's reported daily activities— all of which she performed after her alleged disability onset date—were considered. The ALJ also considered Apke's disclosed medical treatment, noting she received only minor doses of prescription medications and injections.").

First, Courtney F.'s contention that the ALJ provided "no discussion or evaluation the factors contained within SSR 16-3p," and relied only on the medical evidence [Filing No. 11 at 18], is demonstrably false as extensively discussed above.

Also unavailing is Courtney F.'s argument that the ALJ, when describing her seizures as "stable," ignored a statement from her treating neurologist that Courtney F. continues to have breakthrough seizures. The ALJ never concluded that Courtney F. does not have seizures; rather, the ALJ extensively recounted the medical evidence, including instances of reported seizures, expressly found that Courtney F. "experienced occasional seizure activity that involved

unresponsiveness" [Filing No. 7-2 at 19], and accounted for the limitations such seizures posed in the RFC with postural and environmental limitations, [Filing No. 7-2 at 20].

Furthermore, SSR 16-3p did not require the ALJ to ask Courtney F. about her failure to seek mental health treatment. *See Deborah M. v. Saul*, 994 F.3d 785, 790 (7th Cir. 2021). "That rule provides that an ALJ must consider possible reasons for a failure to seek treatment." *Id.* Here, the ALJ did so, noting that Courtney F. denied significant symptoms and exhibited normal behavior, a clear mental state, and normal speech. [*See* Filing No. 7-2 at 18-19.] Courtney F.'s lack of significant complaints and normal examinations are reasons for not seeking treatment. *See Deborah M.*, 994 F.3d at 790 (ALJ addressed reasons for not seeking treatment by highlighting that claimant "reported that she was doing well, denied having weakness, dizziness, shortness of breath, or chest pain and had normal muscle strength and tone") (internal quotations marks omitted). *See also Walter O. v. Kijakazi*, 2022 WL 2046269, at *3 (N.D. Ill. June 7, 2022) ("Moreover, the ALJ considered a possible explanation for Walter's gap in mental health treatment when he considered that Walter's mental health is stable with medication and periodic counseling."). Additionally, Courtney F. has not identified any evidence about barriers to procuring mental health treatment that the ALJ ignored, and Courtney F. did not develop evidence on this front. *See id.*

Finally, Courtney F.'s contention that the ALJ impermissibly equated her ability to perform certain day-to-day living activities with full-time work is also belied by the record. [*See* Filing No. 11 at 20.] As noted previously, Courtney F. testified that "she could not lift a gallon of milk, had trouble getting dressed, and moved slowly." [Filing No. 7-2 at 17.] However, during a consultative examination, Courtney F. reported that she "could shower, dress, and use the toilet independently, and she noted the ability to cook and clean as needed." [Filing No. 7-2 at 19.] The

ALJ was not equating her ability to do these daily tasks with her ability to perform full-time work, but rather was highlighting the discrepancy in Courtney F.'s statements about her limitations, which is a permissible consideration. *See Kleven v. Colvin*, 675 F. App'x 608, 611 (7th Cir. 2017) (upholding credibility finding where the ALJ considered reported activities as "inconsistent with the degree of limitations [claimant] reported").

In sum, the ALJ's evaluation of Courtney F.'s subjective symptoms included a well-developed explanation with specific reasons anchored in the record. Thus, the subjective symptom finding was not "patently wrong" and therefore the Court will not disturb the ALJ's subjective symptom finding. *See Shidler*, 688 F.3d at 310-11.

## B. Treating Neurologist's Opinion

Courtney F. next argues that the ALJ erred by rejecting an opinion offered by her treating neurologist, Dr. Sadia Saba, MD, in which Dr. Saba opined that Courtney F. is unable to work because of her seizures. [Filing No. 11 at 22 (citing Filing No. 7-9 at 31 (July 23, 2020 letter from Dr. Saba)).] She says it was error for the ALJ to reject Dr. Saba's opinion because it addressed an issue reserved for the Commissioner—namely, Courtney F.'s ability to work or not—and instead should have "asked the doctor to specify what [Courtney F.] is incapable of performing." [Filing No. 11 at 22.] She also cites case law addressing the former treating physician rule to argue that remand is required so that the "the ALJ can explain h[er] consideration of the treating source opinion." [Filing No. 11 at 23.]

The Commissioner responds by first correctly noting that under current regulations that became effective for claims filed after March 27, 2017, ALJs are under no obligation to provide explanation or analysis of opinions on matters reserved for the Commissioner. [Filing No. 13 at 16-17 (citing 20 C.F.R. § 404.1520b(c)).] But, the Commissioner says, even under the new

regulations, the ALJ should have addressed other aspects of Dr. Saba's letter that addressed Courtney F.'s limitations—specifically, Dr. Saba's statements that Courtney F. "needs to follow seizure precautions which include no driving, operating heavy machinery etc." [Filing No. 13 at 17-18.]   The Commissioner, however, says that this error was harmless because the ALJ nonetheless incorporated these limitations in the RFC, which limited Courtney F. to jobs that "avoid all exposure to hazardous moving machinery and to unprotected heights" and jobs that do not require "driving or operating of a motorized vehicle," or climbing ladders, ropes, or scaffolds, and any work around open flames or large bodies of water.  [Filing No. 13 at 17-18 (quoting Filing No. 7-2 at 16).]   "In other words," says the Commissioner, "the ALJ included the specific limitations suggested by Dr. Saba into [Courtney F.'s] RFC, along with even greater limitations," so there is no reason for remand.  [Filing No. 13 at 18.]  The Commissioner also says that the ALJ was under no obligation to contact Dr. Saba for more information or clarification.  [Filing No. 13 at 18.]

In reply, Courtney F. contends that invoking the concept of "harmless error" is disfavored by the Seventh Circuit.  [Filing No. 15 at 3.]  She says that the Commissioner is merely offering an impermissible "post hoc" explanation for the ALJ's decision.  [Filing No. 15 at 4.]

Under SSA regulations, a "medical opinion" is "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitation or restrictions …." 20 C.F.R. § 404.1513(a)(2).  For any medical opinion fitting within this definition, the ALJ must identify the medical opinion and then weigh the persuasiveness of the opinion pursuant to several factors, the "most important" being the supportability and consistency of the opinion.  *See* 20 C.F.R. § 404.1520c.

However, certain statements are not entitled to any consideration.   "[T]he ultimate determination of disability is reserved for the Commissioner, and summarily asserting that the claimant is disabled does not suffice under the Commissioner's regulations."  *Albert v. Kijakazi,* *34 F.4th 611, 616 (7th Cir. 2022)*.  *See* 20 C.F.R. § 404.1520b(c)(3) (specifying that "[s]tatements that you are or are not disabled," or statements about whether an individual can or cannot work constitute evidence that "is inherently neither valuable nor persuasive").  Because Courtney F. filed her application after March 2017, 20 C.F.R. § 404.1520c governs her claim.  Under these new regulations, if a statement opines on a matter reserved for the Commissioner, an ALJ need not evaluate the opinion under 20 C.F.R. § 404.1520c because the regulations are clear that the ALJ "will not provide any analysis about how we considered such evidence in our determination or decision." 20 C.F.R. § 404.1520b(c).

A letter dated July 23, 2020 from Dr. Saba reads in full:

To whom it may concern:

Ms. Ford has epilepsy and is on anti-epileptic medi[c]ations for the same.  She unfortunately continues to have breakthrough seizures and therefore is unable to work as she needs to follow seizure precautions which include no driving, operating heavy machinery etc.  She has had testing which includes a prolonged video-eeg monitoring revealing frequent epileptiform discharges as well as the presence of electrographic seizures (seizures which did not have any obvious clinical manifestation).   She therefore cannot work productively due to continued occurrence of seizures.  I fully support her application for disability knowing that this is a permanent condition.

Sincerely,
Sadia Saba MD

[Filing No. 7-9 at 31.]  The ALJ provided the following evaluation of Dr. Saba's letter:  "[T]reating provider Sabia Saba, MD reported that the claimant was unable to work.  Pursuant to CFR 404.1520b(c), a statement about the claimant's disability or ability to work is inherently neither

valuable nor persuasive and, is, therefore, not part of the analysis made herein." [Filing No. 7-2 at 20.]

First, the portions of Dr. Saba's opinion stating that Courtney F. is unable to work plainly falls outside the regulations' definition of a medical opinion and instead impermissibly opines about an issue reserved for the Commissioner. *See* 20 C.F.R. § 404.1520b(c)(3). Thus, the ALJ had no obligation to discuss these aspects of Dr. Saba's opinion.

The Court rejects Courtney F.'s unsupported contention[3] that the ALJ had an obligation to follow-up with Dr. Saba under these circumstances so that he could "specify what [Courtney F.] is capable of performing." [Filing No. 11 at 22.] While 20 C.F.R. § 404.1520b(b)(2)(i) provides that an ALJ "may" recontact a medical source, such discretion is generally exercised by an ALJ when the ALJ is unable to render a decision because of an insufficient or inconsistent record. *See Hughes v. Kijakazi*, 2022 WL 4103194, at *5 (W.D. Wis. Sept. 8, 2022); *Joseph M. v. Saul*, 2019 WL 6918281, at *15 (N.D. Ill. Dec. 19, 2019) ("[A]n ALJ is generally under no 'affirmative duty' to contact a claimant's physician to obtain a medical opinion.") (citing 20 C.F.R. § 404.1520(b)(2)(i)). It remains a claimant's "burden of submitting medical evidence establishing her impairments and RFC." *Mettler v. Saul*, 2020 WL 634419, at *4 (N.D. Ind. Feb. 11, 2020) (citing 20 C.F.R. §§ 404.1512(a) & (c), 404.1513(a) & (b), and 404.1545(a)(3)). Here, the ALJ did not find that the evidence in the record insufficient to reach a decision. Thus, the ALJ did not error in dismissing the portions of Dr. Saba's opinion addressing Courtney F.'s ability to work.

Turning to other aspects of Dr. Saba's opinion, namely, her inability to drive or operate heavy machinery (*i.e.*, the portions arguably concerning what Courtney F. "can still do" and her

---

[3] The only case cited by Courtney F. in this regard is *Garcia v. Colvin*, 741 F.3d 758 (7th Cir. 2013), a case which pre-dates the applicable SSA regulations that became effective in March 2017.

"impairment related restrictions"), the Commissioner concedes that it was error for the ALJ not to address these portions of the opinion.  [Filing No. 13 at 17.]  However, as noted above, the Commissioner contends this error was harmless.

The party who "seeks to have a judgment set aside because of an erroneous ruling carries the burden of showing that prejudice resulted." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). An error is harmless when the reviewing court "can predict with great confidence that the result on remand would be the same." *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013) (citing *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011)).  In other words, technical errors alone are not sufficient for reversal; rather the claimant needs to show (or at least posit a theory) that the error had the potential to impact the outcome of the ALJ's decision.

Here, the Court need not speculate to "predict" the result on remand.  The result is evident because the ALJ included the driving and heavy machinery limitations in the RFC.  [*See* Filing No. 7-2 at 16 (eliminating jobs that require driving, operating a motorized vehicle, or exposure to moving machinery from Courtney F.'s RFC).]  In other words, had the ALJ fully discussed and found persuasive the opinion from Dr. Saba outlining Courtney F.'s limitations, the RFC would not be any different than that adopted by the ALJ.  *See Lloyd v. Berryhill*, 682 F. App'x 491, 497 (7th Cir. 2017) (applying harmless error analysis to ALJ's assessment of expert opinion); *Durham v. Berryhill*, 2019 WL 1375773, at *2 (N.D. Ind. Mar. 27, 2019) ("Any error in failing to explicitly assign weight to a medical opinion in this case is harmless, as the ALJ thoroughly addressed the … findings by repeating them in his RFC.").

Moreover, Courtney F. has made no effort to articulate how the error relating to Dr. Saba's opinion about driving and heavy machinery resulted in prejudice to her.  Instead, she summarily argues in reply that harmless error is disfavored by the Seventh Circuit.  [*See* Filing No. 15 at 3

("Reliance on 'harmless error' is an often used and repeatedly criticized tactic.").] This argument ignores the Seventh Circuit's repeated approval of the application of harmless error in SSA proceedings. *See, e.g., Butler v. Kijakazi*, 4 F.4th 498, 504 (7th Cir. 2021) ("As we have repeatedly held, the harmless error standard applies to judicial review of administrative decisions, and we will not remand a case to the ALJ for further specification where we are convinced that the ALJ reach the same result.") (internal quotation marks and citation omitted).

Thus, the Court finds that the ALJ's treatment of Dr. Saba's opinion does not provide a basis for remand.

## IV.
### CONCLUSION

For the reasons detailed above, the Court **AFFIRMS** the ALJ's decision denying Courtney F. benefits. Final judgment will issue by separate entry.

Date: 1/4/2023

Mario Garcia
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF to all counsel of record.**